UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| FLOYD CISSOM, JR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO. 1:07-CV-00065 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Floyd Cissom, Jr., appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  Cissom's sole argument on appeal is that the ALJ erred at step three of his five-step analysis by performing only a perfunctory examination of Listing 12.05C, the applicable mental retardation listing. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 10.)

For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Cissom applied for DIB and SSI on June 24, 2004, alleging that he became disabled as of June 10, 2004. (Tr. 13, 32.)  The Commissioner denied his application initially and upon

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

reconsideration, and Cissom requested an administrative hearing. (Tr. 13, 29-30.)  On September 28, 2006, Administrative Law Judge (ALJ) Terry Miller held a hearing, at which Cissom, who was represented by counsel, Cissom's wife, and a vocational expert testified. (Tr. 166-86.)

On October 30, 2006, the ALJ rendered an unfavorable decision to Cissom, concluding that he was not disabled despite the limitations caused by his impairments because he could perform his past relevant work, as well as a significant number of other jobs in the economy. (Tr. 13-21.)  The Appeals Council later denied Cissom's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-9.)  Cissom filed a complaint with this Court on March 26, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  FACTUAL BACKGROUND[2]

At the time of the ALJ's decision, Cissom was thirty-nine years old and had an eighth grade education, which included special education classes. (Tr. 20, 47.)  He possessed work experience as a body repairman, chicken cleaner, machine operator, prep painter, press operator, and sander; his longest-held job was for fifteen years as a painter. (Tr. 44, 82.)  Cissom stated that he became disabled as of June 10, 2004, as a result of mild mental retardation and major depressive disorder. (Tr. 13; Opening Br. 2.)

After applying for disability benefits, Cissom was seen by Alan Wax, Ph.D., on July 29, 2004, at the request of the Social Security Administration for a consultative psychological evaluation. (Tr. 84-87.)  Cissom told Dr. Wax that he had never undergone treatment or taken any medication for mental health problems, but that he did receive treatment seven years earlier for cocaine use; he stated that he has not used drugs since that time. (Tr. 84.)  When discussing

---

[2] In the interest of brevity, this opinion recounts only the portions of the 186-page administrative record necessary to the decision.

why he thought he was disabled, Cissom stated: "I can't deal with stress. I can't work anymore. I feel I'm unable to work anymore." (Tr. 84.)  In fact, Cissom noted that he has not been able to work steadily since he stopped using cocaine, stating that his drug use "helped [him] deal with it." (Tr. 84.)  He confided that he would often fall behind at work and then be criticized by his supervisors, which caused him to get frustrated and quit his jobs. (Tr. 84.)

     Dr. Wax performed a clinical interview and mental status examination, and administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). (Tr. 84.)  On the WAIS-III, Cissom had a verbal IQ of 64, a performance IQ of 68, and a full scale IQ of 63. (Tr. 87.)  Dr. Wax concluded that the scores were valid and accurately represented Cissom's cognitive functioning. (Tr. 87.)  Dr. Wax further concluded that Cissom's memory, attention, and communication were commensurate with his cognitive functioning. (Tr. 87.)  He also opined that Cissom was independent in self-care and that he performed most domestic functions, but that he rarely engaged in socialization or recreation. (Tr. 87.)  Dr. Wax diagnosed Cissom with mild mental retardation and a rule-out diagnosis of dysthymic disorder, assigning him a GAF score of 55.[3] (Tr. 87.)

     On August 9, 2004, W. Shipley, Ph.D., a state agency psychologist, reviewed Cissom's medical record and completed a Functional Capacity Assessment and Psychiatric Review Technique, which was later affirmed by K. Neville, Ph.D., another state agency psychologist. (Tr. 95-108.)  Dr. Shipley concluded that Cissom had moderate restrictions of understanding,

---

[3] Global Assessment of Functioning (GAF) is a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning on a hypothetical continuum of mental health illness; the GAF excludes any physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). A GAF score of 55 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or any moderate impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

remembering, and carrying out detailed instructions but no significant limitation with simple instructions or in any other areas of functioning. (Tr. 90-91.)  Rather, he noted that Cissom had mild limitation in activities of daily living; social functioning; and maintaining concentration, persistence, and pace. (Tr. 105.)  In fact, Dr. Shipley specifically rejected Cissom's diagnosis of mild mental retardation as follows:

> [Cissom] has IQ scores of 64, 68 and 63 and is diagnosed with mild mental retardation, however, there's no evidence of retardation before age 22.  In fact, [Cissom] worked as a painter from 1989 until June of 2004.  This would suggest that intelligence has not interfered with his ability to perform simple, repetitive tasks.

(Tr. 94.)

From November 2004 to March 2006, Cissom received mental health treatment at the Bowen Center. (Tr. 109-61.)  In November 2004, he was assessed by Kenneth Schlatter, M.S., L.M.F.T., a mental health worker, who noted that he appeared anxious, angry, and depressed, describing his activity level as "almost manic." (Tr. 159.)  Cissom also reported to Schlatter significant problems in the past with cocaine use and that he lost numerous jobs because of his addiction. (Tr. 159.)  Schlatter observed that Cissom seemed fixated on obtaining disability and his desire to never work again. (Tr. 159, 161.)

That same month, Cissom saw Dr. William Remington for complaints of depression and insomnia. (Tr. 162.)  Dr. Remington assigned him a diagnosis of severe anxiety and depression and prescribed Paxil. (Tr. 162.)

In December 2004, Cissom was evaluated by Dr. Cynthia Spellman, a psychiatrist at the Bowen Center, who diagnosed him with major depressive disorder, recurrent, without psychotic

4

features, and cocaine abuse, in remission. (Tr. 155-58.)  She assigned him a GAF score of 35.[4]

Four months later, however, Dr. Eichman reported that Cissom was taking Paxil and Wellbutrin

and that his symptoms were stable. (Tr. 132.)

In August 2005, Schlatter documented that Cissom was malingering in an attempt to gain

disability benefits, noting that Cissom refused to listen to any alternatives or attempt any changes

in his lifestyle. (Tr. 124.)

In June 2006, Dr. Eichman completed a Medical Source Assessment (Mental) on

Cissom's behalf. (Tr. 164-65.)  She stated that Cissom had a moderate limitation in the ability to

work in proximity to others without being distracted, accepting instructions and criticism from

supervisors, and getting along with peers. (Tr. 164-65.)  Dr. Eichman further noted that

confrontation was difficult for Cissom, explaining, however, that this was not the result of a

mood disorder but rather was consistent with his personality structure. (Tr. 165.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are

supported by substantial evidence, which means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th

Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by

---

[4] A GAF score of 35 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). American Psychiatric Association, *supra* note 3, at 34.

substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5)

whether the claimant is incapable of performing work in the national economy.[5] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On October 30, 2006, the ALJ rendered his opinion. (Tr. 13-21.) He found at step one of the five-step analysis that Cissom had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15.) At step two, the ALJ determined that Cissom had the following severe impairments: major depressive disorder, anxiety, subaverage intellectual functioning, with IQ scores reported to be in the mild mental retardation range with low reading and math skills, but without evidence of adaptive functioning deficits manifested during the developmental period (i.e. before age 22), and a history of drug abuse (primary cocaine usage) that is currently in remission. (Tr. 15.) At step three, he determined that Cissom's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 15.) Before proceeding to step four, the ALJ determined that Cissom's testimony of debilitating limitations was not credible and that he had the following RFC:

> [T]he claimant has the residual functional capacity to perform simple, routine,

---

[5] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

> repetitive tasks that are not performed in a fast-paced production environment and
> that do not involve more than relatively few workplace changes.  He is able to
> make only simple work-related decisions and have only occasional and superficial
> interaction with supervisors and coworkers.  In addition, the claimant is not able
> to work with the general public.  He would work best alone or in semi-isolation
> from others.  He also cannot do work where there is a need to read for
> comprehension or do math calculations, such as in teller work.

(Tr. 20.)

Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Cissom could perform his past relevant work as a sander, an unskilled job. (Tr. 20.)  In addition, the ALJ proceeded to step five where he determined that Cissom could also perform a significant number of other jobs within the national economy. (Tr. 20.)  Therefore, Cissom's claim for DIB and SSI was denied. (Tr. 21.)

*C.  Substantial Evidence Supports the ALJ's Step Three
Finding That Cissom Did Not Meet or Equal Listing 12.05C*

Cissom's sole argument on appeal is that the ALJ erred at step three by failing to specifically mention Listing 12.05C, that is, the applicable listing for mental retardation, and by performing only a perfunctory analysis of the Listing.  Cissom's argument, however, fails to warrant a remand of the Commissioner's final decision, as substantial evidence supports the ALJ's finding that Cissom did not meet or equal Listing 12.05C.

In considering whether a claimant's condition meets or equals a listed impairment, an ALJ "should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citations omitted); *see also Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[W[here an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand

8

is required."). Nonetheless, the Seventh Circuit Court of Appeals has also stated that where an ALJ discusses a claimant's medical evidence in detail, his failure to mention the specific listing at step three does not necessarily constitute reversible error, emphasizing that "[w]e have long held that an ALJ is not required to provide a 'complete written evaluation of every piece of testimony and evidence.'" *Rice*, 384 F.3d at 370 (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). Thus, if an ALJ provides a "sufficient analysis" of the criteria of an applicable listing, his failure to mention the specific listing by name is not fatal. *Ribaudo*, 458 F.3d at 583-84.

Turning to the specific criteria of Listing 12.05C, the introduction to the mental impairment listings states: "If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00A (emphasis added); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 579 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 n.6 (7th Cir. 2002). Specifically, the diagnostic description set forth in Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.05. Thus, a claimant must satisfy the requirements of this diagnostic description *in addition to* the specific requirements articulated in Listing 12.05C, which specifically requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Id*.

9

Here, though the ALJ did not specifically mention Listing 12.05C, he sufficiently analyzed its criteria.  To explain, the ALJ expressly acknowledged that though Cissom had subaverage intellectual functioning with IQ scores in the mild mental retardation range with low reading and math skills, he demonstrated no evidence of deficits in adaptive functioning manifested during the developmental period (that is, before age 22), one of the criteria necessary to satisfy Listing 12.05C.[6] (*See* Tr. 15.)  On that score, the ALJ noted that Cissom is independent in self-care activities; plays computer games on a daily basis; and performs most of the domestic functions in the household, including shopping without assistance. (Tr. 16-17, 19.)  Even more significantly, the ALJ emphasized that Cissom ran his own business in the past; worked as a painter for at least fifteen years; has a long history of working with others in his former jobs; and that he quit his past jobs, rather than being terminated for incompetence or insubordination.[7] (Tr. 18, 19.)  The ALJ reasoned that Cissom's "long work history of substantial gainful activity, some of which was at least semi-skilled," was not consistent with mental retardation. (Tr. 19); *see Witt v. Barnhart*, 446 F. Supp. 2d 886, 895-06 (N.D. Ill. 2006) (considering claimant's eighteen-year work history when concluding that he failed to exhibit deficits in adaptive functioning manifested prior to age 22).

Furthermore, in reaching his conclusion, the ALJ relied upon the assessment by Dr. Shipley and Dr. Neville, the state agency psychologists, who concluded that Cissom's mental

---

[6] The Commissioner does not dispute that Cissom's IQ scores of 64, 68, and 63 were a valid and accurate representation of his cognitive functioning and thus were consistent with the criteria of Listing 12.05C. (Tr. 17; Mem. in Supp. of the Commissioner's Decision 9.)

[7] The Court notes that the ALJ's statement that Cissom's report that he "learns by watching others" is inconsistent with mental retardation or extreme mental limitations fails to support the ALJ's building of an accurate and logical bridge between the evidence and his conclusion. (Tr. 19.)  This comment, however, is ultimately without import, as the ALJ's analysis is amply supported by other substantial evidence.

impairment did not meet or equal a listing. (Tr. 18.)  In fact, Dr. Shipley specifically stated: "This claimant . . . is diagnosed with mild mental retardation, however, there's no evidence of retardation before age 22.  In fact, the claimant has worked as a painter from 1989 until June 2004.  This would suggest that intelligence has not interfered with his ability to perform simple, repetitive tasks." (Tr. 94.)  The Seventh Circuit Court of Appeals has stated that "[t]he ALJ may properly rely upon the opinion of these medical experts." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p.

In fact, Cissom has failed to point to *any* medical source opinion of record other than Dr. Wax, who suggests that he is mildly mentally retarded.  When conflicting medical evidence exists, "in the end, 'it is up to the ALJ to decide which doctor to believe . . . .'" *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (citation omitted); *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do.").  We will not accept Cissom's invitation to merely reweigh the evidence at this juncture. *See Young*, 362 F.3d at 1001 (emphasizing that a court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner"; rather, its "task is limited to determining whether the ALJ's factual findings are supported by substantial evidence").

Clearly, the ALJ discussed the requirements for Listing 12.05C in more than a perfunctory manner and properly concluded that Cissom did not satisfy one of its criteria – the evidence of deficits in adaptive functioning manifested during the developmental period. *Cf. Scott*, 297 F.3d at 595-96 (remanding a step three determination where the Court is left "with grave reservations as to whether [the ALJ's] factual assessment addressed adequately the criteria

11

of the listing."). Indeed, it is Cissom's burden to produce evidence of the criteria necessary to satisfy Listing 12.05C, *Clifford*, 227 F.3d at 868, and he has failed to carry his burden in this instance. Therefore, a remand to consider whether he meets Listing 12.05C would be futile. *See Barnett*, 381 F.3d at 668 (inferring from the ALJ's written decision that he correctly recognized the applicability of the relevant listing for nonconvulsive epilepsy though the ALJ never specifically identified it by name); *see generally Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

In sum, Cissom's argument that a remand is required because the ALJ engaged in a perfunctory analysis at step 3 is unavailing. Substantial evidence supports the ALJ's determination that Cissom's impairment does not satisfy the criteria of Listing 12.05C.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Cissom.

SO ORDERED.

Enter for this 16th day of January, 2008.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge